UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT AVERELL TOMPKINS,

    Plaintiff

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 11-11972

HON. ROBERT H. CLELAND
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Robert Averell Tomkins brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits and Supplemental Security Income under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment [Doc. #13] be GRANTED and that Plaintiff's motion [Doc. #10] be DENIED.

## PROCEDURAL HISTORY

On August 13, 2007, Plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income alleging disability as of January 30, 2007 (Tr. 101, 104). After the initial denial of the claim, Plaintiff filed a timely request for an administrative hearing, held on February 8, 2010 in Orland Park, Illinois before Administrative Law Judge ("ALJ") Karen Sayon (Tr. 27). Plaintiff (represented by attorney Mikel Lupisella, who appeared by teleconference from Flint, Michigan) did not testify. Vocational Expert ("VE")

Stephanee Leech, appearing by teleconference, testified (Tr. 34-39). On March 4, 2010, ALJ Sayon found Plaintiff not disabled (Tr. 23). On March 2, 2011, the Appeals Council denied review (Tr. 1-3). Plaintiff filed for judicial review of the final decision on May 4, 2011.

## BACKGROUND FACTS

Plaintiff, born September 18, 1988, was 21 when the ALJ issued his decision (Tr. 23, 101). He completed 11th grade and worked previously as a physical therapy assistant, cook, and roofer (Tr. 124-128). He alleges disability as a result of a bipolar disorder (Tr. 123).

.   **Plaintiff's Testimony**

*Plaintiff did not appear for the hearing* (Tr. 29). *Counsel stated that Plaintiff was "missing"* (Tr. 30). *Counsel argued briefly that Plaintiff's "moderate" limitations in completing a workweek without psychologically based interruptions rendered him disabled (Tr. 33).*

**B.   Medical Evidence**

**1. Treating Sources**

February, 2005 psychiatric progress notes by David Vora, M.D. state that Plaintiff was doing "okay" (Tr. 172). Dr. Vora found the absence of a psychosis (Tr. 172). The following month, Nan Rahn, M.D. remarked that Plaintiff denied suicidal thoughts (Tr. 179). In April, Dr. Vora found "no major mood swings" since increasing Plaintiff's dosage of psychotropic medication (Tr. 170). The same month, Badar Ahmed, M.D. conducted a physical examination, noting Plaintiff's reports of anxiety attacks (Tr. 183). Dr. Ahmed recommended that Plaintiff seek psychiatric counseling (Tr. 183). The following month, Dr. Vora noted that Plaintiff was "improving in school" (Tr. 169).

In July, 2007, Plaintiff was advised to seek therapy after breaking up with his

girlfriend (Tr. 167). His insight was deemed "poor" but he did not exhibit a psychosis (Tr. 167). Dr. Rahn deemed Plaintiff's progress "fair," noting that he had made two new friends recently (Tr. 177). The following month, the treating notes of Dr. Rahn state that Plaintiff had been using illicit drugs and alcohol for the past four months (Tr. 176). Plaintiff was advised not to drink or use drugs while on psychotropic medication (Tr. 176). In October, 2007, Plaintiff acknowledged that he required the regular use of psychotropic medication (Tr. 224). He stated that he wanted to complete a GED (Tr. 222). A psychiatric evaluation conducted the same month found a GAF of 46-47 [1] (Tr. 217). December, 2007 treating notes state that Plaintiff was getting along with his mother and experienced less anger (Tr. 227). August, 2008 remarks from Plaintiff's treating file state that he had not received treatment since December, 2007 (Tr. 228).

### 2. Non-Treating Sources

In November, 2007, Walter R. Drwal, PhD. conducted a psychiatric examination of Plaintiff on behalf of the SSA (Tr. 189). Plaintiff reported that he had lost three jobs due to anger management problems (Tr. 189). He said that he quit a job as a physical therapy assistant after receiving numerous calls during the workday from his girlfriend (Tr. 190). Plaintiff opined that anger management problems and his inability to find the right psychotropic medication prevented him from working (Tr. 190). He stated that he relaxed by "hanging with friends" (Tr. 191). Plaintiff reported that he had a driver's licence (Tr. 191). Dr. Drwal noted that Plaintiff's demeanor and thought processes were normal (Tr. 192). Plaintiff denied suicidal ideation (Tr. 192). He stated that he was prompted to apply

---

[1] A GAF score of 41-50 indicates "[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning," such as inability to keep a job. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* at 34 (*DSM-IV-TR* )(4th ed.2000).

for disability benefits by his mother (Tr. 193). Dr. Drwal observed that treating records showed that Plaintiff responded well to Trileptal (Tr. 193). Plaintiff was assigned a GAF of 50 (Tr. 194).

The same month, Paul Liu, D.O. performed a non-examining Mental Residual Functional Capacity Assessment on behalf of the SSA (Tr. 197-200). Plaintiff's limitations consisted of *moderate* impairments in the ability to understand and remember detailed instructions; maintain attention and concentration for extended periods; work without psychologically based interruptions; interact appropriately with the general public; accept criticism; respond to workplace changes; or set realistic goals (Tr. 197-198). Dr. Liu found that despite the diagnoses of bipolar and borderline personality disorders, Plaintiff could perform simple tasks in a work setting (Tr. 199). Dr. Liu also completed a Psychiatric Review Technique Form, finding moderate restrictions in activities of daily living, social functioning, and maintaining concentration, persistence, or pace (Tr. 211).

### C. Vocational Expert Testimony

VE Stephanee Leech found that Plaintiff's former job as a carwash worker was unskilled and performed at the light exertional level[2] (Tr. 35). She noting that the carwash work yielded minimal earnings, finding that it did not amount to Substantial Gainful Activity ("SGA") (Tr. 35). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work history:

---

[2] 20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. *Very Heavy* work requires "lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. § 404.1567(e).

> Let's assume he doesn't have any exertional limitations; he does, though, have non-exertional limitations. He should be limited to only simple instructions, only routine tasks, no public interaction and by that I mean there shouldn't be any interaction with the public required by the job. Obviously, for example, a cashier would not be appropriate here, but if, for example, he happened to work in a hotel cleaning room[] and some customer happened to walk by , I think that would be okay because the public interaction really wouldn't be required by the job but it might be very rarely incidental. ¶ Also limited him finally to low-stress work which I'm defining as only occasional decision making. Given those limitations, would his past work be available? I think the only job was the carwash job and I would probably assume that involves quite a bit of interaction with the public (Tr. 37).

The VE testified that given the above limitations, Plaintiff would be unable to perform his former carwash job but could work as an assembler (20,000 jobs in the regional economy) Dictionary of Occupational Titles ("DOT") code 806.684-010; material-handler (12,000) DOT code 669.687-018; and packer (5,000) DOT code 930.587-018 (Tr. 37). The VE testified that if the individual were further limited by the inability to be "constantly work[ing] with other employees to get the product out," the assembly positions would be reduced to 10,000 jobs, material handler, 6,000, and packer, 4,000 (Tr. 38). She stated that if Plaintiff were further limited by psychological limitations causing him to be "off task 30 [percent] of the time due to his inability to either maintain concentration or actually show up for the job," all work would be precluded (Tr. 38). The VE concluded by stating that her testimony was consistent with the information found in the DOT (Tr. 38).

### D.     The ALJ's Decision

Citing Plaintiff's medical records and testimony, ALJ Sayon found that although Plaintiff experienced the severe impairments of "bipolar, borderline personality, and substance abuse disorders" none of the conditions met or medically equaled one of the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 18). The ALJ found that Plaintiff retained the following Residual Functional Capacity ("RFC"):

> To perform a full range of work at all exertional levels but is limited to work involving only simple instructions, only routine tasks, no public interaction, only low stress work (which I define as only occasional decision making) and no tandem tasks (Tr. 19).

Consistent with the VE's job findings, the ALJ determined that although Plaintiff was unable to perform any of his former jobs, he could work as an assembler, material handler, and packer (Tr. 22).

In support of the non-disability finding, the ALJ discounted Plaintiff's claims of disabling psychological problems, finding "no evidence" after 2007 supporting the claim (Tr. 21). The ALJ noted that because Plaintiff had not appeared for the hearing, she had "no way of knowing whether there ha[d] been any deterioration in his health status . . . ." (Tr. 21).

## **STANDARD OF REVIEW**

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must

examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Hypothetical Question

Plaintiff argues that the hypothetical question posed to the VE did not reflect his moderate limitations in concentration, persistence, or pace ("CPP") as found by both Dr. Liu and adopted by the ALJ. *Plaintiff's Brief* at 6-14, *Docket #10* (citing Tr. 18, 211). Citing *Felisky v. Bowen,* 35 F.3d 1027 (6th Cir. 1994), Plaintiff contends that the hypothetical's

failure to reflect his moderate CPP deficiencies mandates remand. *Plaintiff's Brief* at 7.

A hypothetical question constitutes substantial evidence only if it accurately portrays the individual's physical and mental impairments. *Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir. 1987). While the Sixth Circuit has rejected the proposition that all of the claimant's maladies must be listed verbatim, "[t]he hypothetical question . . . should include an accurate portrayal of [a claimant's] individual physical and mental impairments." *Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004).

Moderate deficiencies in CPP suggest substantial limitations which must be acknowledged in the hypothetical question. *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.). The failure to account for moderate deficiencies in concentration, persistence and pace in the hypothetical question constitutes reversible error. *Ealy v. Commissioner of Social Sec.,* 594 F.3d 504, 516 -517 (6th Cir. 2010)("simple repetitive tasks" limitation, by itself, insufficient to account for the claimant's moderate deficiencies in CPP). Other cases in this district and elsewhere have held that "unskilled work," or "simple work" are generally insufficient to account for moderate deficiencies in CPP. *Bankston v. Commissioner,* 127 F.Supp.2d 820, 826 (E.D.Mich.2000)(Zatkoff, J.); *Benton v. Commissioner of Social Sec.* 511 F.Supp.2d 842, 849 (E.D.Mich.,2007)(Roberts, J.); *Edwards v. Barnhart,* 383 F.Supp.2d 920, 931 (E.D.Mich.2005) (Friedman, J.); *Newton v. Chater,* 92 F.3d 688, 695 (8th Cir.1996); *McGuire v. Apfel,* 1999 WL 426035, *15 (D.Or.1999); *Roe v. Chater,* 92 F.3d 672, 676–77 (8th Cir.1996).

However, an ALJ is not required to include the phrase "moderate deficiencies in concentration, persistence, and pace" or other talismatic language in the hypothetical. *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001); *Webb, supra,* 368 F.3d at 633**.** Further, this

Court declines to adopt the position that the limitations of "simple and repetitive," "routine," or "one to two step tasks" are *always* insufficient to address moderate deficiencies in CPP. *See Sutherlin v. Commissioner of Social Sec.,* 2011 WL 500212, *3 (E.D.Mich. 2011)(evidence of record did not require more than a hypothetical limitation of one to two step tasks despite a finding of moderate deficiencies in CPP).

*Ealy, supra,* is often cited in support of the argument that the ALJ's choice of hypothetical limitations did not account moderate concentrational problems. However, *Ealy* does not state that the terms "simple, repetitive," or similar descriptives are intrinsically inadequate to address moderate CPP deficiencies. Rather, the *Ealy* Court held that the hypothetical limitations of "simple, repetitive"(drawn from a non-examining medical source) impermissibly truncated the same source's entire finding that Plaintiff should be limited to "simple repetitive tasks to '[two-hour] segments over an eight-hour day where speed was not critical.'" *Id.,* 594 F.3d at 516. The position that "simple and repetitive" or synonymous terms are *always* insufficient to address moderate CPP deficiencies, even where the record does not support more stringent limitations, reflects an erroneous reading of *Ealy.* Rather, the evidence of record and the ALJ's opinion must be considered in their entirety in determining whether the hypothetical limitations adequately describe the claimant's limitations. *Smith, supra*; *see also Schalk v. Commissioner of Social Sec.*, 2011 WL 4406824, *11 (E.D.Mich.2011)(citing *Hess v. Comm'r of Soc. Sec.,* No. 07–13138, 2008 WL 2478325, at *7 (E.D.Mich. 2008))("no bright-line rule" that moderate concentrational deficiencies require the inclusion of certain hypothetical limitations).

Here, the ALJ's choice of hypothetical limitations sufficiently accounted for Plaintiff's credible limitations as a result of moderate deficiencies in CPP. His argument that the ALJ's restrictions due to CPP were limited to "simple instructions" and "routine tasks"

suggests an overly narrow reading of the ALJ's decision. *Plaintiff's Brief* at 10 (citing Tr. 19). First, Plaintiff cites the RFC found in the administrative opinion rather than the more detailed hypothetical question posed to the VE at the hearing[3] (Tr. 37-38). The disputed hypothetical not only restricted Plaintiff to "simple instructions," "routine tasks," and "low stress work," but precluded certain assembly positions requiring him to be "constantly work[ing]" with others "to get the product out" (Tr. 38). Second, the ALJ's choice of limitations is well supported by the record as a whole. By Plaintiff's own account, his biggest "concentrational" problem was that he lost focus when attempting to multitask, stating that he lost a job because he was unable to juggle his job responsibilities with his girlfriend's phone calls to his place of work[4] (Tr. 190). The ALJ acknowledged these limitations by restricting him to "low stress work" with "only occasional decision making" and limiting contact with both the public and coworkers (Tr. 37-38).

The record otherwise supports a finding of non-disability. The ALJ noted that Plaintiff had not sought mental treatment since December, 2007 (Tr. 20-21). She also cited treating notes stating that Plaintiff's psychological symptoms were stabilized with the use of medication (Tr. 21). October, 2007 treating notes indicate that Plaintiff had come to terms with his ongoing need for psychotropic medication (Tr. 224). Subsequent treating records state that he experienced less anger, got along well with his mother, and described his current situation as "gravy" and "doing ok" (sic) (Tr. 227). The claim for disability benefits is also undermined by the fact that Plaintiff, applying for benefits at the behest of his mother

---

[3] Moreover, the RFC *also* limited Plaintiff to "low stress work" and "no tandem tasks" (Tr. 19).

[4] While Plaintiff stated that he lost other jobs because of anger management problems (Tr. 190) he does not dispute that his moderate limitations in social functioning were well addressed in the hypothetical question (Tr. 37-38).

(Tr. 193), failed to show up for the February, 2010 administrative hearing.

In closing, my recommendation to uphold the Commissioner's decision should not be read to trivialize Plaintiff's psychological conditions. However, based on a review of this record as a whole, the ALJ's decision is well within the "zone of choice" accorded to the fact-finder at the administrative hearing level, *Mullen v. Bowen*, *supra*, and should not be disturbed by this Court.

## CONCLUSION

For the reasons stated above, I recommend that Defendant's motion for summary judgment [Doc. #13] be GRANTED and that Plaintiff's motion [Doc. #10] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within 14 days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than 20 pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                        s/ R. Steven Whalen
                        R. STEVEN WHALEN
                        UNITED STATES MAGISTRATE JUDGE

Date: May 10, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on May 10, 2012.

                        s/Johnetta M. Curry-Williams
                        Case Manager